IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| WILLIAM KEITH TRAMEL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 4:13CV00502 SWW |
| | * | |
| SUPERIOR GRAPHITE, CO., | * | |
| | * | |
| Defendant. | * | |

**Opinion and Order**

Plaintiff William Keith Tramel ("Tramel") brings this action against Superior Graphite Company ("Superior") under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, as amended by 42 U.S.C. § 6101 (the "ADEA"), for unlawful termination of employment. Superior filed a motion for summary judgment to which Tramel responded. Superior filed a reply to the response and Tramel filed a sur-reply.[1] Upon careful review of the motion, response, replies, briefs, and statements of facts, the Court finds the motion should be granted.

**Background[2]**

Superior operates a manufacturing facility in Russellville, Arkansas, where it produces graphite electrodes in a variety of custom lengths and diameters. The primary use for graphite electrodes is in the steel recycling process where the electrode carries and transmits the large amount of electricity needed to melt scrap iron and steel in electric furnaces.

---

[1]Superior filed a motion to strike Tramel's sur-reply because neither the Federal Rules of Civil Procedure nor the Local Rules provide for the filing of sur-replies, and because Tramel did not receive leave of Court to file it. The Court denies the motion to strike.

[2]The background facts are taken largely from the parties' undisputed material facts. *See* ECF Nos. 22 and 26-1.

Superior employs approximately 100 people at its Russellville plant and approximately 320 total employees company-wide.  Most of the Russellville employees work as production employees on the manufacturing lines in one of five distinct production units.  Mr. Scott Anderson, the vice-president of production for Superior and the plant manager at the time, hired Tramel in October 1986.  Mr. Tramel worked for Superior in various production roles and Mr. Anderson supervised Tramel during most of his career at Superior.

In July of 2012, James Wilson, who was the production manager, suggested to Tramel that he apply for the extrusion supervisor position.  Tramel was familiar with the extrusion process from his previous roles in the plant and he received the supervisor position after meeting with Anderson and Candice Underwood, the plant's human resources supervisor.  Extruding graphite is the first step in the graphite electrode manufacturing process.  Mr. Wilson testified it is probably the most critical process in the plant.  If there are problems in the extrusion department (also called Unit 1), the entire manufacturing process is affected because the other units cannot proceed without the extruded graphite.  Mr. Tramel supervised up to eighteen employees and had the overall responsibility to keep the extrusion department running efficiently.

Although Superior's Russellville plant had been profitable for many years, since 2011 the plant had stagnated and struggled to turn a profit.  According to Anderson, the plant encountered significant problems with waste and inefficiencies, and it faced more competition in the marketplace than it had before.  As part of its strategy to return the plant to profitability, Superior sought to redesign its production philosophy and move toward "lean" manufacturing.  A lean manufacturing philosophy is a "work smarter not harder mentality;" improving the efficiency of

the plant without spending a lot of money and increasing production without significantly increasing headcount and adding other business expenses. Its success depends on all employees buying into the philosophy. According to Anderson, employees who either could not or would not adapt to Superior's lean philosophy had great difficulty meeting their performance expectations. In September 2012, as the plant continued to struggle, Superior hired a new plant manager, Will Ryan. Mr. Ryan had lean manufacturing experience. Superior also hired Igor Hilden as production manager. He had lean manufacturing experience as well. Mr. Hilden replaced Wilson, who was demoted. After being placed on a Performance Improvement Plan ("PIP") in October 2012, Wilson was terminated in January 2013.[3]

    Mr. Anderson said that by November 2012, he and other managers felt they had a serious problem with Tramel's performance in the extrusion department. He met with Tramel over the course of several days in November 2012 to troubleshoot various problems. He followed up their discussions with an e-mail dated November 28 in which Anderson laid out his observations and suggestions for the department. Mr. Anderson wrote: "[W]e are at a critical point in extrusion and we must improve our reliability/up time quickly. ... I will dedicate as much time as possible to help you identify and prioritize some items to help accomplish this improvement and help in any other way that I can." The plant was about to shut down production and Anderson listed a series of repairs and installations to be undertaken during the scheduled down time.[4]

    On December 14, 2012, Ryan admonished Tramel and Wilson that Unit 1 was down from 5:30 p.m. the day before and he was not notified until 5:30 a.m. He complained that he still

---

[3] Def's. Mot. Summ. J., Ex. E (Wilson Dep.) at 31-36 and Ex. 3.

[4] *Id.*, Ex. H.

had not gotten a clear answer as to when the unit would be back up. Mr. Ryan emphasized the need for a greater sense of urgency in getting Unit 1 running, and said that night and day supervision needed to continue until the unit is running consistently.[5] Mr. Wilson, who was the Unit 3 supervisor,[6] had been assisting Tramel with the problems in the extrusion department but Tramel was responsible for getting the unit back online and notifying the plant manager of its status.

On December 19, 2012, Ryan notified Tramel and Wilson that he had compiled a list of preventative maintenance items that were missed in November and some of them were critical to quality. He asked why they were not completed in November.[7] Mr. Tramel agreed that the items were important to keep the plant up and running efficiently and effectively.[8] On January 7, 2013, Anderson notified Tramel and Wilson by e-mail of a number of major items in Unit 1 that needed to be addressed, including an "especially hazardous" steam leak and a water leak that Anderson complained he had brought up numerous times but had not been successfully resolved.[9] Later on January 7, Anderson told Tramel by e-mail that he would be spending a lot of time in Unit 1 to help Tramel improve its performance. He asked Tramel to provide him with the unit's daily paperwork so that Anderson could accelerate his ability to help Tramel.[10]

In January 2013, Hilden became Tramel's direct supervisor. He helped Tramel improve

---

[5]*Id.*, Ex. I.

[6]*Id.*, Ex. E (Wilson Dep.) at 28.

[7]*Id.*, Ex. J.

[8]*Id.*, Ex. A (Tramel Dep.) at 58.

[9]*Id.*, Ex. K.

[10]*Id.*, Ex. L.

the performance of the extrusion department's press equipment, addressing steam leaks, cleanliness, and housekeeping.  Mr. Hilden testified that he and Ryan were getting frustrated with Tramel's performance and decided that something needed to be done.  Mr. Ryan testified that Tramel lacked a sense of urgency, lacked communication skills, and failed to follow through on assigned tasks.  He said Tramel was not showing signs of improvement in his management or technical skills.  Mr. Hilden testified that Tramel lacked responsibility and failed to perform his duties.  He also said two employees under Tramel's supervision complained that he showed favoritism when assigning work.[11]  Mr. David Anderson, Scott Anderson's son, said that Tramel always assigned him and Michael Andrade, who worked as extrusion operators, to clean out the pits, which was a very difficult and dirty job, one of the least desirable in the department.  He complained to Ryan that Tramel was showing favoritism.[12]  On February 19, 2013, Superior put Tramel on a PIP.  Mr. Ryan testified that he felt he had to do something about Tramel's performance.

      The Russellville plant periodically shuts down so that employees can perform preventative maintenance.  One such scheduled shutdown occurred toward the end of February 2013.  Mr. Hilden testified that in planning for the shutdown, he asked Tramel to prepare a list of projects Tramel thought he and his team could complete during the shutdown.  Mr. Hilden said Tramel created a smaller list of projects from a list containing approximately 180 items.[13]  Mr. Hilden says Tramel completed only 21% of the maintenance projects he agreed to handle during

---

[11]*Id.*, Ex. C (Hilden Dep.) at 32-33, 79-80.

[12]Def's. Reply , Ex. P (Scott Decl.)

[13]Def's. Mot. Summ. J., Ex. C (Hilden Dep.) at 78.

the shutdown.[14]

Mr. Hilden further testified that on the weekend of March 2, 2013, the plant needed to reach Tramel for his input so that employees could complete maintenance work in the extrusion department but Tramel did not answer his company-issued cell phone or contact the plant all weekend. Mr. Hilden said he had to drive to the plant in Russellville from his home in Conway, on a Saturday, to try to resolve the issues in Tramel's department.[15] Even though Tramel was only two weeks into the PIP, Ryan made the decision to terminate him because his managers believed Tramel had made no effort to correct the issues that led to the PIP.[16]

After Superior terminated Tramel, it transferred a younger employee, Kendall Cotton, into the extrusion department position. Mr. Cotton had been the supervisor of Superior's Ozark department, and that job had extrusion components to it and used the same equipment. Mr. Ryan was impressed with Cotton's determination and leadership skills, and felt Cotton had a sense of urgency about getting the job done. Mr. Tramel felt that Cotton was a hardworking, willing employee.

Mr. Tramel filed a claim of age discrimination with the Equal Employment Opportunity Commission ("EEOC") and, after receiving a Notice of Suit Rights, he timely filed a complaint in this Court.

## Summary Judgment Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to

---

[14] *Id.*, at 40-41; Ex. N.

[15] *Id.*, Ex. C (Hilden Dep.) at 8, 47-51.

[16] *Id.* at 37-38; 44-45; Ex. D (Ryan Dep.) at 65.

the non-moving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 371, 322 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 at 322-23. A factual dispute is genuine if the evidence could cause a reasonable jury to enter a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Celotex*, 477 U.S. at 331.

**Discussion**

It is unlawful for an employer to terminate an individual because of his age. 29 U.S.C. § 623(a)(1). Because Tramel has no direct evidence of discrimination, his claim is considered under the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Mr. Tramel must first establish a *prima facie* case of age discrimination by showing he: (1) was at least 40 years old, (2) suffered an adverse employment action, (3) was meeting his employer's legitimate expectations at the time of the adverse employment act, and (4) was replaced by someone substantially younger. *Holmes v. Trinity Health*, 729 F.3d 817, 822 (8th Cir. 2013). Establishing a *prima facie* creates a presumption that the employer engaged in unlawful discrimination, and shifts the burden back to the employer to articulate a legitimate, non-discriminatory reason for its action. *Johnson v. Securitas Sec. Servs. USA,* Inc., 769 F.3d 605, 611 (8th Cir. 2014). If the employer provides such a reason, the presumption disappears and the burden shifts back to the employee to show that the proffered reason was pretext for age

discrimination. *Id*. "To survive summary judgment, an employee must both discredit the employer's articulated reason and demonstrate the 'circumstances permit a reasonable inference of discriminatory animus.' An employee's attempt to prove pretext requires more substantial evidence of discrimination than required to make a prima facie case because we view this evidence in light of the reasons articulated by the employer. Ultimately, the employee must show that age was the 'but-for' cause of the adverse employment action." *Id*.

Superior contends Tramel cannot show that he was meeting the company's legitimate expectations at the time he was terminated. Mr. Tramel argues this element only requires him to show he was minimally qualified for the job. *See Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 471 (8th Cir. 2011)(where discharge is at issue and the employer already hired the employee, the employee "should not be tasked with anticipating and disproving his employer's reasons for termination during his prima facie case"). Mr. Tramel also contends that if the Court applies the "reasonable expectations" standard, a reasonable jury could find he performed his job duties satisfactorily because he exceeded production goals without any recordable accidents.

Even assuming Tramel establishes a *prima facie* case of age discrimination, the Court finds Superior articulated a legitimate, non-discriminatory reason for his termination. Both Anderson and Ryan testified Tramel was not completing assigned tasks, that there were complaints of favoritism, his supervisors were unable to reach him for an entire weekend when they needed him, and his performance had become so deficient that they had to place him on an PIP.

Mr. Tramel argues that Superior's assertions that he required constant assistance in performing his job are unreliable. He says that in order to handle the engineering and

maintenance problems in the extrusion department, he had to rely on his supervisors and other departments for assistance either because he was not properly trained or because he was not in direct control of the manpower needed to address the issues. He complains that Unit 1 had an old piece of equipment that was new to the department and had many engineering and maintenance issues. As to Superior's complaints that Tramel did not appropriately escalate, *i.e.* inform his managers of issues in Unit 1, Tramel provides evidence that he sent a number of e-mails and responded to e-mails from his supervisors during the two and one-half months prior to the institution of his PIP.[17] He also sent several e-mails to Ryan and Hilden during his PIP.[18] Mr. Tramel says his managers as well as maintenance and engineering employees delayed responding to him or completely failed to communicate with him, and asserts there is no documentation in his personnel file of complaints of favoritism or harassment. Mr. Tramel argues that the fact that he was not given a chance to complete his PIP is evidence that his age was the real reason for his termination.

As evidence of pretext, Tramel takes issue with Hilden's testimony as to whether Tramel was provided with a copy of a list of the issues Ryan and Hilden had regarding the extrusion unit when Tramel was placed on his PIP. According to the PIP, Tramel failed "to follow instructions and follow through on assigned tasks - see attached."[19] Mr. Hilden testified Ryan completed the PIP form and that he made a list titled "Unit 1 concerns" that set forth the issues Hilden and

---

[17]Pl's. Resp. in Opp'n to Mot. Summ. J. [ECF No.29], Exs. F-M [ECF. Nos. 29-7 to 29-14].

[18]*Id*., Exs. N & O [ECF Nos. 29-15 to 29-16].

[19]*Id*. , Ex. P [ECF No. 29-17].

Ryan had with Tramel's performance and why he was placed on PIP.[20]  Mr. Tramel disputes that the list was part of the PIP and says it was compiled after his PIP.  He argues that Hilden's deposition testimony is confusing about when and how the list was presented to him and raises suspicions about Superior's reasons for his termination.  Mr. Tramel also complains that some of the maintenance items he was charged with completing could not be accomplished during his PIP because of the plant shutdown, Superior's failure to train him, and because he was unable to get the needed assistance from maintenance and engineering department employees.  Lastly, Tramel asserts that a comparison of his skills to those of the younger man who replaced him support his claim of pretext.

In reply, Superior points to evidence that Wilson started training Tramel for the position, and Anderson, Hilden, and others continued to train and assist Tramel.  It asserts that even though Tramel did not have direct supervisory responsibility for maintenance employees or electricians, it was Tramel's responsibility to assure that maintenance, electrical, and other projects in his unit were identified and completed.  Superior states that since Cotton took over, the extrusion department has greatly improved even with the same equipment that was there when Tramel was in charge.  There is no dispute that there were uncompleted projects on Tramel's to-do list or that his supervisors were unhappy with his performance.

"Courts do not sit as super-personnel departments to second-guess the business decisions of employers.  The threshold question when considering pretext is whether [Superior's] reasons for its employment actions are true, not if they are wise, fair or correct."  *Dorsey v. Pinnacle Automation Co,*, 278 F.3d 830, 837 (8th Cir. 2002)(internal citation omitted).  The ADEA does

---

[20]*Id.*; Def's. Mot. Summ. J., Ex. C [Hilden Dep.] at 66-70.

"not prohibit employment decisions based upon poor job performance, erroneous evaluations, personal conflicts between employees, or even unsound business practices." *Hill v. St. Louis Univ.,* 123 F.3d 1114, 1120 (8th Cir.1997). After reviewing the evidence in the light most favorable to him, and drawing all inferences in his favor, the Court finds Tramel fails to satisfy his burden of presenting a triable issue of fact that his termination was based on age.

## Conclusion

IT IS THEREFORE ORDERED that Superior's motion for summary judgment [ECF No. 20] is granted. Judgment will be entered accordingly.

DATED this 5th day of January, 2015.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE